UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

Steyer Seeds LLC,

    Plaintiff,

v.

Partners in Production LLC,

    Defendant.

Case No. 15-CV-267

---

## COMPLAINT

---

Plaintiff Steyer Seeds LLC ("Steyer"), for its Complaint against Defendant Partners in Production LLC ("PIP"), alleges as follows:

### NATURE OF THE ACTION

1. This is a civil action for federal trademark infringement, unfair competition and false designation of origin under the Lanham Act, and includes claims of trademark infringement, unfair competition, and fraudulent marketing under Wisconsin common and statutory law.

### PARTIES

2. Steyer is an Ohio limited liability company with its principal place of business at 6154 North County Road, Tiffin, Ohio 44883. The members of Steyer are Bernard Steyer and Anthony Steyer. Both members are domiciled in the State of Ohio.

3. PIP is a Wisconsin limited liability company with its principal place of business in Columbia County at 200 Del Monte Road, Arlington, Wisconsin 53911 and whose registered agent is Jack Norman Kaltenberg of the same address. On information and belief, no member of PIP is a citizen of the State of Ohio.

## JURISDICTION AND VENUE

4. This action arises under the trademark laws of the United States, 15 U.S.C. § 1114 *et seq*. Accordingly, this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, and has supplemental jurisdiction over Steyer's state law claims under 28 U.S.C. § 1367(a). In addition, this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because the parties are citizens of different States and the amount in controversy exceeds $75,000.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) - (2), (c)(2) and (d).

## FACTUAL BACKGROUND

6. Steyer is a family-owned and operated seed company based in Ohio. Steyer is in the business of evaluating, producing, marketing, selling, and distributing various seeds to farmers and independent agents across much of the Midwest. Bernie Steyer, along with his father and brother, formed the company that is now Steyer Seeds in 1985.

7. Steyer has been granted numerous license agreements to produce and distribute a wide array of seed varieties containing certain genetics and traits covered by numerous united states and worldwide patents. These biotechnologies are approved by the Environmental Protection Agency ("EPA"), the United States Department of Agriculture ("USDA") and various other governmental agencies for distribution and planting in the United States

8. Steyer operates in 13 states, and has sold seeds directly to farmers and growers in Wisconsin since at least 2001.

9. PIP is a seed company based in Arlington, Wisconsin that purports to be in the business of developing, testing, growing, marketing, and selling seeds for corn, soybeans, wheat, alfalfa, clover, small grains, and cover crops.

10. Jack Kaltenberg founded PIP in 2007, following termination of his employment from Kaltenberg Seed Company ("Kaltenberg Seeds") – his family's now-defunct business – on or about March 22, 2007.

11. PIP sells a number of seed products from various companies, touting itself on its website (as of February 15, 2015) as "one of the few remaining independent seed companies" and "offer[ing] customers the highest quality, top performing genetics available from ALL of the industry providers." PIP has since removed these statements from its website in an apparent attempt to distance itself from these admissions

12. PIP has access to corn and soybean varieties, and genetics and traits, through a license PIP has from Syngenta Greenleaf.

13. PIP also works with Mark (or "MRK") Seed Company, a relationship PIP advertises on its web site as one PIP's many "Partners."

14. In August 2007, Dennis Tauchen, a longtime business associate and one of the owners of Direct Enterprises, Inc. ("DEI"), an Indiana company that Steyer Seeds did business with, arranged a meeting between Jack Kaltenberg and Bernie Steyer at a hotel in Ottawa, Illinois so that Mr. Kaltenberg could discuss a potential business relationship with Steyer Seeds. At the time of this meeting, Mr. Kaltenberg had not yet formed PIP.

15. In the meeting, Mr. Kaltenberg and Mr. Steyer discussed Mr. Kaltenberg accessing three or four Round-Up Ready soybean varieties from DEI and Steyer that Kaltenberg Seeds had previously offered for sale before Mr. Kaltenberg was terminated, and offer them for sale through a company Mr. Kaltenberg would form, which later became PIP.

16. Neither at this meeting, nor in any communications between PIP and Steyer after the meeting, did the parties ever agree or even discuss that Wisconsin would be Mr. Kaltenberg's, or any subsequently formed company's, exclusive sales territory for Steyer.

17. Neither at this meeting, nor in any communications between PIP and Steyer after the meeting, did the parties ever agree or even discuss that Mr. Kaltenberg, or the company he would form, would design, develop or test corn and soybean seed varieties for use in Wisconsin that would be "co-branded" as a "Steyer/PIP" or "PIP/Steyer" product, or that Mr. Kaltenberg, or a company he would form, would have any sort of exclusive rights to sell such products in Wisconsin.

18. Under the limited agreement Mr. Steyer made with Mr. Kaltenberg, the company that would become PIP would order certain Monsanto-traited seed from Steyer's inventory and Steyer would provide seed bags to PIP for packaging and labeling and ultimate resale by PIP. PIP would timely pay for the product it purchased, as well as making timely royalty payments for any seed genetics and traits that Steyer is required to pay to the licensor and/or supplier (e.g., Monsanto).

19. Under the limited agreement Mr. Steyer made with Mr. Kaltenberg, the company that would become PIP would also provide Grower Point of Sale ("GPOS") reports to Steyer, which are required by suppliers like Monsanto and which must be provided to suppliers by Steyer. PIP would also provide periodic inventory reports to Steyer so that Steyer could determine the appropriate amount of "Steyer" seed bags to supply PIP to package Steyer seeds.

20. PIP is free to sell other brands of seed in Wisconsin and Steyer is free to sell direct to Wisconsin customers in direct competition with PIP.

21. Steyer owns a valid and subsisting United States Patent and Trademark Office registration for the word mark "Steyer Seeds" for goods and services identified as "agricultural seeds" (Registration No. 3372136 dated January 22, 2008).  Steyer has been using the "Steyer Seeds" mark continuously since 1986.  Steyer has spent considerable time, effort and money in advertising and promoting the "Steyer Seeds" mark, as well as seed and other products sold under the "Steyer Seeds" mark.  Steyer's robust marketing, advertising and promotion have made the "Steyer Seeds" mark well known in the seed industry and in the seed marketplaces in which Steyer operates.

22. Steyer's registration constitutes constructive notice of Steyer's ownership of the "Steyer Seeds" mark, as provided in 15 U.S.C. § 1072.  On information and belief, PIP has had actual notice of Steyer's use and ownership of the "Steyer Seeds" mark from the start of PIP's business in 2007.  On information and belief, PIP's founder, Jack Kaltenberg, had actual notice of Steyer's use and ownership of the "Steyer Seeds" mark years before PIP was founded in 2007.

23. Steyer granted PIP a limited, non-exclusive right to use the "Steyer Seeds" mark for the purpose of identifying and labeling seeds PIP sourced from Steyer and which PIP was to sell under the "Steyer Seeds" mark.

24. Steyer has never granted PIP the right or permission to co-brand, advertise, offer for sale or sell seeds PIP sourced from Steyer, and/or obtained from third-party originators through Steyer's license, as "PiP/Steyer" and/or "Steyer/PiP".  However, without right or Steyer's permission, Steyer has learned that PIP has and is co-branding, advertising, offering for sale and selling seeds sourced from Steyer, or obtained from third-party originators through Steyer's license, as "PiP/Steyer" and/or "Steyer/PiP".

25. For example, in its 2015 Seed Guide, PIP advertises and offers for sale a number of seed varieties under the designation "PiP/Steyer" and/or "Steyer/PiP".

26. Upon information and belief, PIP has used, and continues to use, the "PiP/Steyer" and/or "Steyer/PiP" designation in other publications and/or communications.

### *COUNT I:FEDERAL TRADEMARK INFRINGEMENT*
**(15 U.S.C. § 1114)**

27. Steyer incorporates and realleges the foregoing paragraphs 1 through 26 as if fully set forth herein.

28. PIP's use of the designation "PiP/Steyer" and/or "Steyer/PiP" to brand certain varieties of seeds sourced from Steyer is highly similar to Steyer's registered mark.

29. PIP's use of "PiP/Steyer" and/or "Steyer/PiP" is likely to cause confusion, deception and mistake by creating a false and misleading impression regarding the true source of Steyer-brand seeds sold by PIP to customers in Wisconsin, or that seed varieties labeled, advertised or promoted by PIP under the designation "PiP/Steyer" or Steyer/PIP" have the sponsorship, endorsement or approval of Steyer.

30. Likelihood of confusion and deception is enhanced by the fact that Steyer's commercial activities and mark are provided or intended to be provided to the same class of customers as are PIP's commercial activities.

31. In fact, Steyer has received reports of actual consumer confusion caused by PIP's infringing activity. On information and belief, a customer who had purchased seed from PIP (obtained by PIP through Steyer's license), which PIP had designated as a "PIP/Steyer" or "Steyer/PIP" variety, had complaints about the quality of the seed he had purchased and planted. The customer expressed confusion over the source of the seed to the sales representative who

6

called on this customer to address the customer complaint, and asked whether the deficient seed the came from PIP or Steyer.

33. PIP has used and continues to use marks confusingly similar to Steyer's mark in violation of 15 U.S.C. § 1114, and PIP's activities have caused, and unless enjoined by this Court, will continue to cause, a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Steyer's goodwill and reputation for which Steyer has no adequate remedy at law.

33. PIP's aforementioned conduct constitutes willful and intentional infringement of Steyer's rights in its mark in violation of 15 U.S.C. § 1114.

34. PIP's actions have caused, and unless enjoined by this Court, will continue to cause, serious and irreparable injury and damage to Steyer for which Steyer has no adequate remedy at law.

35. PIP had either actual notice or constructive notice of Steyer's registration pursuant to 15 U.S.C. § 1072 prior to PIP's use and/or sale of seeds under the "PIP/Steyer" or "Steyer/PIP" designation.

36. PIP's conduct demonstrates an intentional, willful, and malicious intent to trade on the goodwill association with Steyer's mark thus entitling Steyer to injunctive relief and to recover PIP's profits, any and all actual damages, enhanced profits and damages, costs, and attorneys' fees pursuant to 15 U.S.C. §§ 1114, 1116 and 1117.

### COUNT II: FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a)(1)(A))

37. Steyer realleges and incorporates by reference the allegations contained in paragraphs 1 through 36 as if set forth herein.

38. PIP's use of the designation "PiP/Steyer" or "Steyer/PiP" falsely suggests that seeds PIP sources from Steyer (and that should be sold under Steyer's mark) instead originate from PIP, or that the "PiP/Steyer" or "Steyer/PiP" designation is connected with or sponsored by Steyer, and constitutes unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A).

39. PIP's conduct, unless enjoined by this Court, will continue to cause serious and irreparable injury and damage to Steyer, for which Steyer has no adequate remedy at law.

40. PIP had either actual notice of constructive notice of Steyer's registration pursuant to 15 U.S.C. § 1072 prior to its adoption, use, and sale of Steyer-sourced seeds under the designation "PiP/Steyer" or "Steyer/PiP".

41. PIP's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill association with Steyer's mark thus entitling Steyer to injunction relief and to recover PIP's profits, any and all actual damages, enhanced profits and damages, costs, and attorneys' fees pursuant to 15 U.S.C. §§ 1114, 1116 and 1117.

## COUNT III: TRADEMARK INFRINGEMENT
**(Wisconsin Common Law)**

42. Steyer realleges and incorporates by reference the allegations contained in paragraphs 1 through 41 above, as if set forth in their entity herein.

43. Steyer, by and through its predecessors, and licensees, has common law rights in the Steyer's mark based on its valid and continuous use of the mark.

44. PIP's unauthorized use of the "PiP/Steyer" or "Steyer/PiP" designation to promote, advertise, market, and/or sell Steyer-sourced seeds is likely to cause confusion, mistake, and deception of the public as to the identity and origin of Steyer-brand seeds or

8

affiliation with Steyer or permission from Steyer that does not exist, causing irreparable harm to Steyer for which there is no adequate remedy at law.

45. Despite its actual and constructive knowledge of Steyer's ownership and prior use of the Steyer mark, PIP has used and continues to use Steyer's mark without Steyer's authorization or consent. PIP's actions are deliberate and willful and have been done with the intention of trading upon the valuable goodwill built up by Steyer in the "Steyer Seeds" mark.

46. PIP's unauthorized use of the "PiP/Steyer" or "Steyer/PiP" designation constitutes trademark infringement under the common law of the State of Wisconsin.

47. As a result of PIP's acts, Steyer has suffered an continues to suffer and incur irreparable injury, loss of reputation, and pecuniary damages to be proven at trial. Unless enjoined by this Court, PIP will continue these acts, thereby causing Steyer further immediate and irreparable injury.

## COUNT IV: UNFAIR COMPETITION
**(Wisconsin Common Law)**

48. Steyer realleges and incorporates by reference the allegations contained in paragraphs 1 through 47 above, as if set forth herein.

49. Steyer, by and through its predecessors and licensees, has common law rights in the "Steyer Seeds" mark based on its valid and continuous use.

50. PIP's marketing, promotion, offering for sale, and sale of certain variety of seeds sourced from Steyer and sold under the "PiP/Steyer" or "Steyer/PiP" designation constitutes false designations, descriptions or representations of origin. As result of PIP's conduct, the public is likely to believe that certain varieties of Steyer-brand seeds originate from PIP or that the "PiP/Steyer" or "Steyer/PiP" designation has been approved by Steyer.

51. PIP's unauthorized use of the Steyer mark constitutes unfair competition under the common law of the State of Wisconsin.

52. As a result of PIP's acts, Steyer has suffered and continues to suffer and incur irreparable injury, loss of reputation, and pecuniary damages to be proven at trial. Unless enjoined by this Court, PIP will continue these acts, thereby causing Steyer further immediate and irreparable injury.

### COUNT V: VIOLATION OF WIS. STAT. § 100.18

53. Steyer incorporates and realleges the foregoing paragraphs 1 through 52 as if fully set forth herein.

54. PIP's use of "PiP/Steyer" and "Steyer/PiP" as alleged herein constitutes a representation made to the public with intent to induce an obligation or sale.

55. PIP's representation is untrue, deceptive, or misleading because it purports to sell a "brand" of seeds that does not legitimately exist, gives the impression that Steyer brand seeds are somehow "PIP" brand seeds, and otherwise misleads and deceives the public.

56. On information and belief, Steyer has suffered pecuniary loss as a result of PIP's misrepresentations.

WHEREFORE, Plaintiff Steyer Seeds LLC requests judgment as follows:

(a) on Counts I - IV of its Complaint, the issuance of a permanent injunction prohibiting Partners in Production, LLC from further infringement and misuse of Steyer's mark and awarding Steyer actual, enhanced and punitive damages in an amount to be determined at trial, and awarding Steyer its costs and attorneys' fees pursuant to 15 U.S.C. § 1117 and Wisconsin law;

(b) on Count V of its Complaint, the issuance of a permanent injunction prohibiting Partners in Production, LLC from making further untrue, misleading, and deceptive

representations to the public, awarding Steyer damages in an amount to be determined at trial, and awarding Steyer its costs and attorneys' fees pursuant Wis. Stat. § 100.18(11)(b)(2); and

(c) granting such further relief as the Court deems appropriate.

Dated this 8th day of May, 2015.

*s/ Jeffrey A. McIntyre*
Jeffrey A. McIntyre
Jordan C. Corning
WHYTE HIRSCHBOECK DUDEK S.C.
P.O. Box 1379
Madison, Wisconsin 53701-1379
Telephone: 608-255-4440
Fax: 608-258-7138
Email: jmcintyre@whdlaw.com
Email: jcorning@whdlaw.com

Attorneys for Steyer Seeds LLC

WHD/11469253.1

11